Approved: _____
Benjamin A. Gianforti
Assistant United States Attorney

20 MJ 7305

Before: THE HONORABLE PAUL E. DAVISON
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA             :   **SEALED COMPLAINT**

    - v. -                          :   Violations of
                                         18 U.S.C. §§ 922(a),
JASON BROWN,                         :   922(k), 924(c) and 21
                                         U.S.C. § 841(b)(1)(C)
                                     :
              Defendant.                 COUNTY OF OFFENSE:
                                         WESTCHESTER

- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

       RICHARD RISTEEN, being duly sworn, deposes and says that he is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and charges as follows:

## COUNT ONE
(Firearms Trafficking)

    1.  On or about June 5, 2019, in the Southern District of New York and elsewhere, JASON BROWN, the defendant, not being a licensed importer, licensed manufacturer, and licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, would and did willfully and knowingly engage in the business of dealing in firearms, and in the course of such business would and did ship, transport, and receive firearms in interstate and foreign commerce, to wit, BROWN sold a Mossberg 500A 12-gauge shotgun, which previously had been shipped and transported in interstate and foreign commerce.

    (Title 18, United States Code, Section 922(a)(1)(A).)

**COUNT TWO**
(Firearms Trafficking)

2. On or about June 5, 2019, in the Southern District of New York and elsewhere, JASON BROWN, the defendant, not being a licensed importer, licensed manufacturer, and licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, would and did willfully and knowingly engage in the business of dealing in firearms, and in the course of such business would and did ship, transport, and receive firearms in interstate and foreign commerce, to wit, BROWN sold a .40 caliber Glock model 27 Gen 4, which previously had been shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Section 922(a)(1)(A).)

**COUNT THREE**
(Firearms Trafficking)

3. On or about October 16, 2019, in the Southern District of New York and elsewhere, JASON BROWN, the defendant, not being a licensed importer, licensed manufacturer, and licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, would and did willfully and knowingly engage in the business of dealing in firearms, and in the course of such business would and did ship, transport, and receive firearms in interstate and foreign commerce, to wit, BROWN sold a Hawk model H&R Pardner Pump 12-gauge shotgun, which previously had been shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Section 922(a)(1)(A))

**COUNT FOUR**
(Possession of a Defaced Firearm)

4. On or about October 16, 2019, in the Southern District of New York and elsewhere, JASON BROWN, the defendant, knowingly did possess a firearm which had the importer's and manufacturer's serial number removed, obliterated, and altered, to wit, a Hawk model H&R Pardner Pump 12-gauge shotgun, which had previously been shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Sections 922(k))

**COUNT FIVE**
(Firearms Trafficking)

5. On or about October 29, 2019, in the Southern District of New York and elsewhere, JASON BROWN, the defendant, not being a licensed importer, licensed manufacturer, and licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, would and did willfully and knowingly engage in the business of dealing in firearms, and in the course of such business would and did ship, transport, and receive firearms in interstate and foreign commerce, to wit, BROWN sold a .22 caliber Savage Arms model Savage 62 rifle, which previously had been shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Section 922(a)(1)(A).)

**COUNT SIX**
(Firearms Trafficking)

6. On or about June 23, 2020, in the Southern District of New York and elsewhere, JASON BROWN, the defendant, not being a licensed importer, licensed manufacturer, and licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, would and did willfully and knowingly engage in the business of dealing in firearms, and in the course of such business would and did ship, transport, and receive firearms in interstate and foreign commerce, to wit, BROWN sold a .762 caliber Romarm/Cugir model WASR-10 rifle, a .32 caliber Keltec model P32 pistol, a .38 caliber Taurus model 85 revolver, and a .357 caliber Taurus model 605 Protector Poly revolver, all of which previously had been shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Section 922(a)(1)(A).)

**COUNT SEVEN**
(Firearms Trafficking)

7. On or about July 2, 2020, in the Southern District of New York and elsewhere, JASON BROWN, the defendant, not being a licensed importer, licensed manufacturer, and licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, would and did willfully and knowingly engage in the business of dealing in firearms, and in the course of such business would and did ship, transport, and receive firearms in interstate and foreign commerce, to wit, BROWN sold a .45

caliber Rock Island model 1911A1 pistol and a 9mm Ruger model RS9 pistol, both of which previously had been shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Section 922(a)(1)(A).)

### COUNT EIGHT
(Narcotics Distribution)

8. On or about July 2, 2020, in the Southern District of New York, JASON BROWN, the defendant, intentionally and knowingly distributed and possessed with intent to distribute a controlled substance.

9. The controlled substance that JASON BROWN, the defendant, distributed and possessed with intent to distribute contained a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Sections 812, 841(a)(1), and 841(b)(1)(C).)

### COUNT NINE
(Use of a Firearm)

10. On or about July 2, 2020, in the Southern District of New York and elsewhere, JASON BROWN, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the narcotics distribution charged in Count Eight of this Complaint, knowingly did use and carry a firearm, and, in furtherance of such a crime, did possess a firearm.

(Title 18, United States Code, Sections 924(c)(1)(A)(i).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

11. I have been a Special Agent with the ATF since 2017. I am one of the law enforcement agents with primary responsibility for this investigation. This affidavit is based upon my own observations, my conversations with other law enforcement agents and others, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the

actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

  12. Based on my involvement in this investigation, including direct surveillance, my conversations with a confidential informant (the "CI"[1]) and other law enforcement officers who were directly involved in the events described below, and my review of reports and records, I have learned the following:

    a. With the assistance of the CI, the ATF and the Yonkers Police Department (the "YPD") have conducted six controlled purchases of firearms from JASON BROWN, the defendant, on or about October 1, 2018, June 5, 2019, October 16, 2019, October 29, 2019, June 23, 2020, and July 2, 2020. During the controlled purchase on or about July 2, 2020, BROWN also sold the CI a quantity of methamphetamine.

    b. As described in more detail below, during each of the controlled purchases except for the controlled purchase on or about June 5, 2019, the CI was searched for contraband before and after the purchase.[2] The CI was outfitted with an audio/video transmitter and recording device for all of the controlled purchases. After completing each purchase, the CI turned over the items he/she purchased from BROWN to law enforcement. I was present for all of the controlled purchases.

    c. After the first controlled purchase on or about October 1, 2018, another member of law enforcement showed the CI a picture of BROWN from a New York State Department of Motor Vehicles ("DMV") database. The CI confirmed that the individual

---

[1] The CI has been working as a paid informant for the ATF since approximately 2017. He has been paid approximately $2,600 in connection with this investigation. The CI has a prior misdemeanor conviction for criminal possession of a controlled substance in the seventh degree. The information that the CI has provided in connection with this investigation has proven reliable, and has been independently corroborated by other evidence.

[2] With respect to the controlled purchase on or about June 5, 2019, I and the other investigating agents inadvertently failed to search the CI for contraband.

5

in the picture was the same individual who had sold him/her the firearms described below.

       d.    These six controlled purchases are described in greater detail below. I conducted physical surveillance during each of these controlled purchases. I have also reviewed the audio and video recordings the CI made of these controlled purchases. Additionally, I was present when the CI met with members of law enforcement at the end of each of these controlled purchases to de-brief, and personally observed the CI produce to members of law enforcement the firearms, narcotics, and other items purchased from BROWN.

<u>October 1, 2018: Mossberg 500A 12-gauge shotgun</u>

       e.    On or about September 26, 2018 and over the ensuing days, the CI contacted BROWN at the direction of law enforcement to arrange for the purchase of a firearm. Ultimately, BROWN directed the CI to meet him at an address on McLean Avenue in Yonkers on or about October 1, 2018. These conversations between the CI and BROWN were recorded.

       f.    On or about October 1, 2018, I and other members of law enforcement met with the CI in Yonkers to carry out the controlled purchase of a firearm from BROWN. The CI was provided with approximately $350 in buy money.

       g.    At approximately 12:30 PM, I and other members of law enforcement set up surveillance at 32 Tibbetts Road, which I believe to be BROWN's current residence in Yonkers based on the controlled purchases described herein and the results of a public records search I conducted using a law enforcement database (the "Brown Residence"). During the course of their surveillance, I and other members of law enforcement were able to identify BROWN based on the DMV photograph described above.

       h.    At approximately 12:50 PM, the CI arrived at the address on McLean Avenue and contacted BROWN to let him know that he/she had arrived. At approximately 12:57 PM, BROWN left 32 Tibbetts Road and drove to McLean Avenue. Upon arriving, BROWN contacted the CI and directed the CI to follow him. Shortly thereafter, BROWN and the CI pulled into the driveway of the Brown Residence. BROWN and the CI got out of their vehicles and walked towards a detached garage in the rear of the property (the "Garage").

       i.    Once they were inside the Garage, BROWN pulled out an unloaded shotgun and handed it to the CI along with some

ammunition. Thereafter, the CI and BROWN got into the CI's vehicle, where the CI provided BROWN with approximately $350 for the shotgun and ammunition.

j. After the transaction was complete, The CI left the area and met up with me and other members of law enforcement to turn over the purchased items, audio/video transmitter, and recordings.

k. Based on a later examination of the firearm by another Special Agent with the ATF, I have learned that the firearm that the CI purchased from BROWN was a Mossberg 500A 12-gauge shotgun that was manufactured in Connecticut.

June 5, 2019: .40 Caliber Glock Model 27 Gen 4

l. On or about June 4, 2019, BROWN contacted the CI to arrange for the sale of a firearm at the Brown Residence the next day, June 5, 2019. On or about June 5, 2019, at approximately 9:50 AM, I and other members of law enforcement met with the CI in Yonkers to carry out the controlled purchase of a firearm from BROWN. The CI was provided with approximately $1,200 in buy money.

m. At approximately 10:20 AM, the CI left the staging area and headed to the Brown Residence. At approximately 10:31 AM, the CI arrived at the Brown Residence and went into the Garage with BROWN. At that point, BROWN sold the CI a pistol, ammunition (including a thirty-one round high-capacity magazine), and a ballistic vest for approximately $1,100.

n. The CI then left the Brown Residence and met up with me and other members of law enforcement to turn over the purchased items, audio/video transmitter, and recordings.

o. Based on a later examination of the firearm by another Special Agent with the ATF, I have learned that the firearm that the CI purchased from BROWN was a .40 caliber Glock model 27 Gen 4 that was manufactured in either the state of Georgia or Austria.

October 16, 2019: Hawk Model H&R Pardner Pump 12-Gauge Shotgun

p. On or about October 15, 2019, BROWN contacted the CI to arrange for the sale of a firearm at the Brown Residence the next day, October 16, 2019. On or about October 16, 2019, at approximately 10:00 AM, I and other members of law

enforcement met with the CI in Yonkers to carry out the controlled purchase of a firearm from BROWN. The CI was provided with approximately $400 in buy money.

        q. At approximately 10:50 AM, the CI left the staging area and headed to the Brown Residence. At approximately 10:59 AM, the CI arrived at the Brown Residence and went into the Garage with BROWN. At that point, BROWN sold the CI a shotgun and ammunition for approximately $400. BROWN noted to the CI that he (BROWN) had defaced the serial number of the shotgun.

        r. Shortly thereafter, the CI left the Brown Residence and met up with me and other members of law enforcement to turn over the purchased items, audio/video transmitter, and recordings.

        s. Based on a later examination of the firearm by another Special Agent with the ATF, I have learned that the firearm that the CI purchased from BROWN was a Hawk model H&R Pardner Pump 12-gauge shotgun with a defaced serial number that was manufactured in China.

October 29, 2019: .22 Caliber Savage Arms Model Savage 62 Rifle

        t. On or about October 28, 2019, BROWN contacted the CI to arrange for the sale of a firearm at the Brown Residence the next day, October 29, 2019. On or about October 29, 2019, at approximately 9:58 AM, I and other members of law enforcement met with the CI in Yonkers to carry out the controlled purchase of a firearm from BROWN. The CI was provided with approximately $300 in buy money.

        u. At approximately 10:22 AM, the CI left the staging area and headed to the Brown Residence. At approximately 10:30 AM, the CI arrived at the Brown Residence and went into the Garage with BROWN. At that point, BROWN sold the CI a rifle, ammunition, and a black combat knife.

        v. Shortly thereafter, the CI left the Brown Residence and met up with me and other members of law enforcement to turn over the purchased items, audio/video transmitter, and recordings.

        w. Based on a later examination of the firearm by another Special Agent with the ATF, I have learned that the firearm that the CI purchased from BROWN was a .22 caliber

Savage Arms model Savage 62 rifle manufactured in Canada.

### June 23, 2020: Multiple Firearms

x. On or about June 20, 2020, the CI and BROWN arranged for another sale of firearms on or about June 23, 2020 at the Brown Residence. On or about June 23, 2020, at approximately 10:20 AM, I and other members of law enforcement met with the CI in Yonkers to carry out the controlled purchase from BROWN. The CI was provided with approximately $5,000 in buy money.

y. At approximately 10:38 AM, the CI left the staging area and headed to the Brown Residence. At approximately 10:47 AM, the CI arrived at the Brown Residence. At this point, the audio/video transmitter stopped working.

z. Based on my de-brief with the CI following the controlled purchase, I know that, after the CI arrived at the Brown Residence, BROWN led the CI into the basement, where BROWN had laid out the firearms, ammunition, and other items that the CI was to purchase. The CI gave BROWN approximately $5,000 for the firearms, ammunition, and other items.

aa. Shortly thereafter, the CI left the Brown Residence and met up with me and other members of law enforcement to turn over the purchased items, audio/video transmitter, and recordings.

bb. Based on a later examination of the firearms by another Special Agent with the ATF, I have learned that the CI purchased the following firearms from BROWN:

   i. a .762 caliber Romarm/Cugir model WASR-10 rifle manufactured in Romania;

   ii. a .32 caliber Keltec model P32 pistol manufactured in Florida;

   iii. a .38 caliber Taurus model 85 revolver manufactured in Brazil; and

   iv. a .357 caliber Taurus model 605 Protector Poly

revolver manufactured in Florida.[3]

July 2, 2020: Multiple Firearms and Methamphetamine

cc. On or about June 29, 2020, the CI and BROWN arranged for a sale of firearms and methamphetamine on or about July 2, 2020 at the Brown Residence. On or about July 2, 2020, at approximately 10:55 AM, I and other members of law enforcement met with the CI in Yonkers to carry out the controlled purchase from BROWN. The CI was provided with approximately $5,000 in buy money.

dd. At approximately 11:16 AM, the CI left the staging area and headed to the Brown Residence. At approximately 11:24 AM, the CI arrived at the Brown Residence and went into the Garage with BROWN, where the CI was introduced to an unidentified black male who called himself "Jay." At that point, BROWN sold the CI the firearms, ammunition (including a 100-round drum magazine), and other items for approximately $4,000 and approximately 20.3 grams of a white substance that later field tested positive for the presence of methamphetamine for approximately $1,000.

ee. Shortly thereafter, the CI left the Brown Residence and met up with me and other members of law enforcement to turn over the purchased items, audio/video transmitter, and recordings.

ff. Based on a later examination of the firearms by another Special Agent with the ATF, I have learned that the CI purchased the following firearms from BROWN:

   i. a .45 caliber Rock Island model 1911A1 pistol manufactured in the Philippines; and

   ii. a 9mm Ruger model RS9 pistol manufactured in Arizona.[4]

13. Based on my conversations with another ATF agent who checked ATF databases, I know that from on or about October 1,

---

[3] BROWN also sold the CI a .223 caliber Anderson Manufacturing model AM-15 rifle for which an interstate nexus has not yet been determined.

[4] BROWN also sold the CI a .223 caliber Anderson Manufacturing model AM-15 pistol for which an interstate nexus has not yet been determined.

10

2018 to on or about July 2, 2020, JASON BROWN, the defendant, was not a licensed firearms dealer, importer, and manufacturer.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of JASON BROWN, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

/s/ Richard Risteen (known to Court)
_____
RICHARD RISTEEN
Special Agent
Bureau of Alcohol, Tobacco,
Firearms, & Explosives

Sworn to me through the transmission of this
Affidavit by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 41(d)(3) and 4.1
On:   7/13/20 via FaceTime
_____
THE HONORABLE PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK